```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
                         SOUTHERN DIVISION
```

- - - - - - - - - - - - - - - x
                                 :

UNITED STATES OF AMERICA,     :
                                 :     Criminal Nos. 03-02802-CBD
   v.                        :               13-0660-RWT

HENRY LIONELL GARVIN,        :

      Defendant.          :     November 26, 2013

- - - - - - - - - - - - - - - x     Greenbelt, Maryland

## DETENION HEARING

    BEFORE:   THE HONORABLE MAGISTRATE CHARLES B. DAY, Judge

APPEARANCES:

For the Government:          DEBORAH A. JOHNSTON, Esq.
                                    Office of the U.S. Attorney
                                    6500 Cherrywood Lane, Suite 400
                                    Greenbelt, MD  20770

For the Defendant:           MARC G. HALL, Esq.
                                    200-A Monroe Street
                                    Suite 310
                                    Rockville, MD  20850

Audio Operator:               Rita Sigona

Transcription Company:       Compuscribe
                                    5100 Forbes Boulevard
                                    Suite 101
                                    Lanham, MD  20706
                                    (301) 577-5882

Proceeding recorded by electronic sound recording, transcript produced by transcription service.

<u>I N D E X</u>

| | Page |
|---|---|
| Preliminary Discussion | 3 |
| <u>Arguments</u>: | |
| By Deborah Johnston, Esq.<br>  on Behalf of the Government | 3 |
| By Marc Hall, Esq.<br>  on Behalf of the Defendant | 11 |
| Ruling - Judge Charles B. Day | 14 |

KEYNOTE: "---" indicates inaudible in the transcript.

P R O C E E D I N G S

    MS. JOHNSTON: --- Deborah Johnston of the DEA.

    THE COURT: Good morning, welcome.

    MR. HALL: Good morning, Your Honor, Marc Hall representing Mr. Garvin, we are present and ready to proceed.

    THE COURT: Good morning, welcome all. Give me just a moment, please.

    (Pause.)

    THE COURT: Okay, I have a copy of the pretrial services report that was initially conducted in this matter. It is dated November 22nd, and I trust that both parties have a copy of such. Is that correct?

    MS. JOHNSTON: Yes, Your Honor.

    MR. HALL: Yes.

    THE COURT: Okay. With that, I will go Government first.

    MS. JOHNSTON: Your Honor, the Government at this time is moving to have Mr. Garvin detained pending resolution of this case on the basis of both risk of flight and his danger to the community.

    In terms of the instant offense, Your Honor, Mr. Garvin, quite frankly, has been under surveillance by the DEA for some time. And what occurred on November 22nd of 2013, was the execution of a search warrant at his most recent residence, which is not the address that he provided to

pretrial services. And as an aside, the address he provided to pretrial services is 2015 Savannah Terrace, Apartment D, Southeast, Washington, D.C. was not where he was residing at the time the search was executed on November 22nd. He was residing at 5501 45th Avenue, Apartment 110, Hyattsville, Maryland.

And he was at that address and that is confirmed by his girlfriend, Ms. Atkins, who says he resided at that address since March 2013. His address prior to moving to that address was on American Boulevard also in Prince George's County where agents had observed him engaged in hand-to-hand drug transactions.

But, for whatever reason he has failed to mention both of those addresses to pretrial services --

THE COURT: Let me take you back. You said something about a hand-to-hand, did you say this was observed, this Defendant --

MS. JOHNSTON: Yes, Your Honor, at his previous address on American Boulevard in Prince George's County, it is over in Hyattsville by Prince George's Plaza, he had been observed engaged in a hand-to-hand transaction. The people he dealt with were subsequently stopped by the Prince George's County Police. Shortly, thereafter, he moved from that residence.

THE COURT: Is that part and parcel of this

1    particular claim?

2        MS. JOHNSTON: That is not what he is charged with
3    here.

4        THE COURT: Okay.

5        MS. JOHNSTON: But in terms of his address and his
6    history and his risk of flight, the Court should be aware of
7    the fact that he, indeed, had that residence on American
8    Boulevard, which I believe, and the agent will correct me, was
9    not in his name, neither is his current address in his name.

10       They are both in names of nominees and at the
11   current address that forms the basis of these charges a search
12   warrant was executed. When they executed the search warrant
13   at that residence, Mr. Garvin was present in the residence.

14       They knocked on the door, attempted to gain entry.
15   Mr. Garvin, was observed from outside the rear of the premises
16   breaking out a glass window, throwing two guns out of the
17   window and attempting to put himself out through the window
18   when he observed the police officers and then returned into
19   the premises.

20       The two guns that he was attempting to throw out of
21   the premises were handguns, in addition to those two handguns,
22   the agents also recovered inside the premises an assault
23   rifle, manufactured in Russia, which was loaded with 17
24   bullets.

25       They also found another handgun, a third handgun, a

1  380 handgun that according to NCIC had been reported stolen.
2  That was also loaded. They also found approximately 43
3  assorted 45-caliber bullets, currency and 147 -- approximately
4  147 grams of heroin.
5  In addition to that, they found in the residence a
6  false identification, a false driver's license bearing
7  Mr. Garvin's photograph but in the name of Michael Stanford.
8  He used that identity to rent a storage locker in this areas
9  as well.
10  So, based upon, one, the items that are found in the
11  residence, based upon this false identification and the
12  information set in the pretrial services report, we believe he
13  is a risk of flight.
14  First of all, Mr. Garvin, did not disclose his
15  actual residence. He claimed to be residing with his sister
16  for the past five years. And, indeed, he was residing,
17  according to Ms. Atkins, at the current address where the
18  search warrant was executed and had previously he had lived at
19  another address in Hyattsville for 1.5 years. This is what
20  his girlfriend told the police not what the Government learned
21  through surveillance.
22  But, again, our surveillance would also corroborate
23  the fact that he was at an earlier address in Hyattsville,
24  Maryland, that was not leased or rented in his name.
25  In addition to that, if we look at the pretrial

services report, he also acknowledges a car payment in the amount of $400, documents recovered from the house reflect that he had a Corvette that was recently purchased but placed in his girlfriend's name. And also a Range Rover, which was titled in his name but he was operating an Infiniti driven by his girlfriend.

His car payments are in excess of $700 a month apiece for each of his two car payments. So, he has misrepresented his assets as well to pretrial services.

THE COURT: Let me drill down that just a little bit.

MS. JOHNSTON: Sure.

THE COURT: You have indicated that the Defendant has two vehicles now titled in the name of others?

MS. JOHNSTON: He has one vehicle, the Corvette, that was recently purchased, which is titled in Ms. Atkins' name. He has a Range Rover that was titled in his name.

THE COURT: Let's deal with the first one then --

MS. JOHNSTON: Right.

THE COURT: -- the one in Ms. Atkins' name. How do I determine that it was falsely titled?

MS. JOHNSTON: Because Mr. Garvin told the Agents that it was his vehicle.

THE COURT: Okay, that is the Corvette.

MS. JOHNSTON: After he was advised of his Miranda

```
cch                                                                    8

 1   Rights.

 2              THE COURT:  Okay.

 3              MS. JOHNSTON:  He gave statements to the agents.

 4              THE COURT:  And let's move to the second vehicle.

 5              MS. JOHNSTON:  The Range Rover is titled in his

 6   name.  Based upon documents recovered and further

 7   investigation, agents felt that the payments on each vehicle

 8   are in excess of $700.

 9              THE COURT:  Okay.

10              MS. JOHNSTON:  So, he has misrepresented his

11   information here to pretrial services.  The agents found no

12   documentation at the residence that confirmed any employment

13   as a security officer, which ---.  They did find a security

14   uniform but no documentation of any paystubs or things of that

15   sort in the residence.

16              THE COURT:  Was that a -- what was the name of that

17   entity?  Was it Brook something -- Broadwater --

18              MS. JOHNSTON:  Broadwater, Your Honor.

19              THE COURT:  -- was that a Broadwater uniform?

20              MS. JOHNSTON:  No, Your Honor, I have pictures of

21   the security uniform.  It just says security officer.  It

22   doesn't have a company name on it.

23              THE COURT:  Okay.

24              MS. JOHNSTON:  And we do have a copy of the false

25   driver's license in the name of Michael Stanford with his
```

1  picture on it, which as I said, he used to lease a storage
2  facility. If we then turn to his criminal history -- again,
3  based upon those facts, we believe he is a risk of flight.
4  　　　　　We also believe he is a risk of flight because he
5  has prior conviction under The Bail Reform Act in 2001 for a
6  failure to appear for trial and the distribution in a heroin
7  case. He is presently on probation or parole. I believe
8  probation in Prince George's County as a result of a guilty
9  plea in August of 2011. He served some time in prison and was
10 released on supervised release -- not supervised release,
11 released and placed on probation.
12 　　　　　So he was on conditions of probation all the while
13 he is living in a house under somebody else's name with three
14 handguns and a loaded assault rifle and heroin. All are in
15 violation of any conditions of probation.
16 　　　　　In addition to that we believe he is a danger to the
17 community. So, I think those factors support our position for
18 why he is a risk of flight. And I only point to the
19 conviction for the Bail Reform Act there is another arrest for
20 a Bail Reform Act violation. And there is also a FTA warrant
21 that was issued in another case.
22 　　　　　So, for those reasons, we believe he is a risk of
23 flight and not likely to appear under any conditions given the
24 fact that he was on probation and supervision at the time he
25 committed these offenses.

1    In addition to that, we believe he is a danger to
2 the community.  Mr. Garvin has an extensive criminal history
3 dating back to -- in terms of convictions, dating back to
4 1997.  He has prior convictions for attempted possession with
5 intent to distribute cocaine, prior convictions for actual
6 possession with intent to distribute cocaine, a second
7 conviction or attempted possession with intent to distribute
8 cocaine, a conviction for carrying a pistol without a license.
9 And all in the District of Columbia and then his most recent
10 conviction in 2011 for possession of CDS.
11    Given those convictions, that criminal history and
12 the loaded weapons that were found in the residence as well as
13 the amount of heroin, be in an excess of a hundred grams, we
14 believe all of those indicate that he is a danger to the
15 community, his use of multiple identifications as set forth in
16 the pretrial services report, his attempt to flee out the
17 window albeit it was a brief attempt, his history of FTAs all
18 indicate he is a risk of flight and also a danger to the
19 community.  We ask the Court to order him detained.
20    THE COURT:  Thank you.  What is the maximum penalty
21 here?
22    MS. JOHNSTON:  Your Honor, the maximum penalty for
23 possession with intent to distribute 100 grams or more of
24 heroin is a five to 40 years.  A mandatory minimum of five
25 year, a maximum sentence of 40 years.  A period of four years

1   of supervised release.  That is without any enhanced penalty.

2   He would be eligible for an enhanced penalty that would

3   increase it to 10 years mandatory minimum, maximum sentence of

4   life imprisonment  and $8,000,000 fine instead of a $4,000,000

5   fine.

6           THE COURT:  Okay.  Thank you.  I will hear from the

7   defense.

8           MR. HALL:  Thank you, Your Honor.  We are asking the

9   Court to consider releasing Mr. Garvin and allowing him to

10  live with his girlfriend, Ms. Atkins, who is present in the

11  courtroom.

12          Of course, at any time of a detention hearing, the

13  defense is in a difficult position because we don't have

14  access to what will become the discovery in this case.  We

15  don't have any change to examine or to refute anything that

16  the Government said concerning what actually occurred in

17  regard to this case.

18          But let me point out a couple of things about this

19  Defendant.  First of all, the Court looks at the pretrial

20  report, the pretrial report indicates that one of their

21  concerns is that the Defendant has a history of substance

22  abuse and has a mental health history that is laid out in the

23  section on his current health status.

24          And what I would suggest to the Court, all of that

25  is indicative of somebody who is attempting to compensate and

1  self-medicate themselves.  And that is something that could be

2  dealt with in some type of community base supervision if he

3  was on a period -- if he was on pretrial release and if during

4  that period of time, the Court would require that he get

5  substance abuse treatment and mental health treatment.  Those

6  issues could be very well addressed.

7       Insofar as the residential information, the address

8  Savannah Terrace is a permanent address.  He has, however, he

9  was living with Lisa Atkins at the 5501 45th address in

10 Hyattsville.  It is my understanding it is her intention not

11 to go back to that address and that that was the address she

12 legitimately got in her name.

13      She has another address in Hyattsville at 3411 Robey

14 Terrace, where she would permanently reside and allow the

15 Defendant to reside in her home on an electronic monitoring

16 with her serving as the third party custodian.

17      The Government indicates that they found no evidence

18 of his employment.  However, they do admit that they found the

19 security guard uniform just because somebody doesn't happen to

20 have paystubs in their house doesn't necessarily mean that

21 they are not employed.

22      Pretrial also points out as possible concerns the

23 fact that he has a passport but it is indicated in the report

24 that it is an expired passport.  That can certainly be turned

25 over to the Court so the Court wouldn't have to be concerned

1  with him using that to leave the jurisdiction.

2  Also, it indicates foreign travel. He went to
3  Jamaica once on a vacation. That is hardly an extraordinary
4  relationship with a foreign country. It is not as if he has
5  family there or would have any ability to go there.

6  He has a brother who is a DC police officer in this
7  district who is a probation agent. And certainly they could
8  also be of assistance to support in ensuring that he gets here
9  to Court. And I obviously if the Court gave him a period
10 of -- gave him home confinement as on an electronic monitoring
11 as a condition of his release, the Court could basically have
12 him stay at home. He does not, at this time, need -- I mean
13 it would certainly be great if he was able to work.

14 But if that is the only way he can get out is to
15 have him stay at home at this address with Ms. Atkins, then
16 the Court would also be assured that he is not out dealing.
17 Insofar as the issue about the vehicles, I would suggest to
18 the Court, again, I think that is a bit of a red herring,
19 simply because he got the vehicle in Ms. Atkins name doesn't
20 mean it was done for some for nefarious purpose.

21 For all we know and of course I don't have that
22 information at this point, he may have a bad credit history
23 and that could be a likely reason why he got the vehicle in
24 her name.

25 I would suggest to the Court that the Court could

fashion a condition release with supervision pretrial and with the substance abuse, home confinement and mental health counseling. That would ensure both safety of the community and that he would appear all future Court dates. Thank you, Your Honor.

THE COURT: Thank you. Well, the defense starts in the right place because when I look at this pretrial services report, the first thing that knocks my socks off is the substance abuse history here. I am not sure I have seen the likes of this. Strong indications of an alcohol problem, marijuana problem, ecstasy problem, codeine, heroin, cocaine, you name it.

All of which supposedly are consumed daily and throw in a little PCP weekly, that is an amazing cocktail. This on the top of what appears to be mental health issues is scary. So, I applaud Mr. Hall for going right for the jugular. And it may be that those matters could be addressed by some kind of treatment ---.

I have this discrepant information here where as the Government stated in its opening ---. He says he lives here but their information and the search warrant that they executed suggests that he lives elsewhere.

We have got supposedly a sister who has been living with him at one location for five years and some question as to whether or not the sister is in the picture at all. If she

is, very good, as she works for the probation department somewhere.

The employment history. If I heard the Government correctly, it was that your data banks indicated that there is no income from a security agency. Is that correct as opposed to a paystub?

MS. JOHNSTON: Your Honor, the data base for Maryland indicated no employment history. But in addition to that there were no records found in the residence nor was there any security office or identification card that one would think one would have. All we found was basically a uniform with no company name on it, just saying security officer.

THE COURT: Understood. Certainly, the Government's information with respect to the items obtained from the search warrant, if true, is powerful stuff. And you are right, Mr. Hall, in that at this stage of the proceedings you really don't have a whole lot to work with because discovery has yet to be provided and the nature of the criminal process means that the Government gets to see them first and gets an investigation first.

But I have invited through the years a revisitation of any conditions of release with detention based upon an inaccurate proffer by the Government. That remains.

I accept a great deal of what the Government has to

say about its own execution of its search warrant. That the Defendant was present and that he was -- or there will be at least testimony to suggest that he was throwing weapons out of the home. Weapons that were recovered, that there was an assault weapon found in the home, a third handgun stolen, found in the home. A loaded heroin found in the home, false identification found in the home.

I don't know if there can be any real dispute about his being on his probation at this point but sometimes there is. And I have had those instances where that has been corrected not do to any maliciousness but sometimes records aren't as clear as we think they are.

But I agree with the Government's assertion that the criminal history here is not a beautiful thing either. That has already been spelled out along with the failures to appear.

On balance here, while your creative suggestion of an electronic monitoring or some kind of placement with a treatment facility are all the right arguments to be made, as I look at the bail reform factors here, they do not weigh in favor of the accused. The nature and circumstances of the offense charged, especially if it is a crime of violence or a drug --- that weighs in favor of the Government.

The weight of the evidence, search warrants, him being in the home at the time of the search warrant, what was

1  recovered, that weighs in favor of the Government.  In terms
2  of some of the subfactors under the history and
3  characteristics of the person, I only have limited information
4  to speak to many of these but the history of drug use and
5  abuse that weighs in favor of the Government.
6        The criminal history weighs in favor of the
7  Government.  Record of Court appearance in favor of the
8  Government, past conduct in favor of the Government.  Then the
9  residence in the Community that weighs in favor the accused.
10 Financial resources big question mark, employment, similar.
11       On balance, those don't weigh that category.  That
12 factor does not weigh in favor of the Defendant on balance
13 weighs in favor of the Government and another subcategory
14 there is whether at the time of the offense the Defendant was
15 on probation, parole, or released pending trial.  And that
16 weighs in favor of the Government.
17       No matter what kind of math I attempt to do here,
18 algebra, trigonometry or whatever, it all weighs in favor of
19 the Government.  The Government has met its burden on risks of
20 flight.  It has met its burden on dangerousness to the
21 community and I must order the Defendant detained.
22              (Whereupon, the hearing was concluded.)
23
24
25

# C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the duplicated electronic sound recording of the proceedings in the above-entitled matter.

_____/s/                01-10-2014
Cora C. Holliday, Transcriber         Date